ODOM, J., dissents and adheres to his original opinion.

199 So. 377

**GAIENNIE v. COOPERATIVE PRODUCE CO., Inc., et al.**

No. 35877.

Nov. 4, 1940.

Rehearing Denied Dec. 2, 1940.

Sanders & Miller, of Baton Rouge, Harvey E. Peltier, of Thibodaux, Albritton & Ware, of Baton Rouge, and St.

Clair Adams & Son, of New Orleans, for appellants.

Fred G. Benton and Dewey J. Sanchez, both of Baton Rouge, for appellee.

Gist & Thornton, of Alexandria, for intervener United States Fidelity & Guaranty Co.

PONDER, Justice.

This case is certified to us by the Court of Appeal for the First Circuit under the provisions of Article 7, Section 25, of the Constitution of this State, for instructions.

In this suit the plaintiff is seeking damages for personal injuries, etc., arising out of an accident in which an automobile driven by the plaintiff, Charles F. Gaiennie, and a truck driven by Frank Monte, were involved. The suit is directed against the defendant and its public liability insurance carrier, the Massachusetts Bonding and Insurance Company. The case is pending on appeal in the Court of Appeal for the First Circuit from a judgment adverse to the defendant.

The Court of Appeal states that it has no difficulty in reaching the conclusion that the driver of the truck of the defendant company was guilty of gross negligence, but entertains doubt, under the facts and circumstances, whether or not the plaintiff was guilty of such contributory negligence as to bar his recovery. The Court of Appeal desires answers to the following two questions: (1) What is the general rule that should be applied under the following and a similar state

of facts; (2) Under the facts herein outlined, was the plaintiff guilty of such contributory negligence as to bar his recovery? The Court of Appeal in certifying the questions has given its examination of and conclusions upon the matters submitted. After examining the discussion of the case by the Court of Appeal, it is apparent that court is of the opinion that the judgment of the lower court should be affirmed.

The statement of facts, as found by the Court of Appeal, is as follows: On the evening of Monday, October 4, 1937, between 8 and 8:30 o'clock, Frank Monte, employed by the Cooperative Produce Co., Inc., and driver of one of its trucks, was returning to Baton Rouge on Highway No. 71 after a day's work which took him to Opelousas and other points as far north as Marksville, Louisiana. The truck he was driving that day was not the one he drove regularly but one which his employer used locally in Baton Rouge. It was a Chevrolet truck, 1937 Model, having a stake body painted blue. He had a regular helper to go on his delivery trips with him, but on that day this helper did not show up so he took a negro boy with him as his helper. This boy has since died and his version of what happened on the night of the accident has never been given.

Highway No. 71 in this section of West Baton Rouge Parish is straight for a distance of several miles. On reaching a point approximately ten miles west of Port Allen, the truck which Monte was driving ran out of gasoline and it was

necessary for him to stop. The entire width of the highway at that point is approximately 52 feet, measured as follows: 20 feet of paved slab, 26 feet of shoulder on the north side, and 6 feet of shoulder on the south side. As Monte was traveling east, the south was to his right and the north to his left. He made no attempt to park the truck on the wider shoulder on the north because of traffic moving on the highway at that moment. He did park on the south side, but did not clear the paved portion of the highway, one of the front wheels of the truck resting on the right shoulder and the other on the paved portion of the road, and both rear wheels resting on the pavement. The body of the truck extended at an angle across the paved slab of the right traffic lane for some five feet from the south edge thereof.

There is some doubt arising out of the testimony that Monte left the headlights of the truck on after stopping, but assuming that they were burning, they naturally projected a beam of light directly in front of the truck in the manner in which it was parked and afforded no warning of its presence on the highway to traffic that was approaching it from the rear. The preponderance of the testimony shows that the tail and side clearance lights were not burning, and admittedly, there were no flares placed on the highway and no flares were even in the truck. Monte sent the helper to the nearest filling station for gasoline and he remained with the truck. Monte had a flash or searchlight with him but did not

use it in trying to warn approaching traffic. Therefore, to traffic coming from the west, this truck, parked on a portion of the paved slab of the highway in the dark, was an object of peril placed and permitted to remain there through the negligence of Monte, who, it is admitted, was acting within the scope of his employment.

Within a period of time which is not fixed, but which we estimate to be several minutes, during which Monte, the driver of this truck, occupied himself in a rather indefinite manner, as far as his testimony shows, in looking for flares in the truck, Charles S. Gaiennie, the plaintiff herein, approached the truck from the west in a Chevrolet coach belonging to his employer and which he was driving at a rate of speed estimated to be from 35 to 40 miles per hour. He kept his car in the south lane of travel on the paved portion of the highway which was to his right, and as he neared the point where the truck was parked he began meeting cars going west or in the opposite direction to that in which he was travelling. There were four or five cars following each other and all of them with the headlights burning so brightly as to dazzle his eyesight intermittently. He dimmed the headlights on his car and slowed down its speed to between 20 and 25 miles per hour.

The effect of the dazzling lights from the cars he was meeting was that he was not blinded by them but his vision was momentarily and intermittently impaired to the extent that instead of having a full view of the paved highway ahead of him as he had without such impairment, his

view of the pavement was limited to approximately 18 or 20 ft. within which distance he could, at the speed he was going, bring his car to a stop. As he had dimmed the headlights on his car, that had the effect of tilting the beam of light downward at an acute angle on the pavement in front of him, this also causing some restriction in his sight of the pavement as far as distance was concerned.

Plaintiff felt safe in proceeding on the highway under the circumstances, and he did. As he passed the last of the series of cars whose dazzling headlights caused momentary impairment to his ordinary vision, his car, in the meantime covering such distance as its speed carried it, he found himself confronted with the truck parked on the highway without any sign or warning of its presence, some eight or ten feet ahead of him. The rear body of the truck was some 3 or 4 feet above the ground and extended back some four feet over the rear wheels, so that when plaintiff dimmed his lights the tilted beam of his headlights projected under the truck making it that much more difficult for him to see it.

As the truck loomed in front of him he made an effort to avoid running into it by applying his brakes and pulling his car to the left in order to pass around it. He was too close then, however, to avert a collision. The right front end of his car struck the rear left end of the truck and because the body of the truck stood lower from the level of the pavement than the radiator and hood of the car by some two to four inches, the front end of the car was pushed under the truck and the upper parts of the car which are made of lighter material such as the radiator, the hood and cowl were badly crushed. The bumper which is made of stronger steel was bent in a sort of "U" shape and the frame to which the motor and body are attached was slightly bent out of line on one end. There is some doubt whether the motor was pushed back but it is shown that the cowl and instrument board in front of the driver's seat were smashed and driven in. The damage to the truck apparently was negligible. It is doubtful whether the impact caused it to be moved forward any distance at all.

■ The accident involved herein occurred during the year 1937, prior to the enactment of Act No. 286 of 1938. The law applicable to determine whether or not the plaintiff was guilty of negligence would be Act No. 21 of 1932, Section 3, Rule 4, paragraph (a), which makes it unlawful for any person to drive a motor vehicle upon the roads and highways of this State at any other than a careful, prudent, reasonable and proper speed, having due regard to the traffic, surface and width of the highway, the location and neighborhood, and any other conditions or circumstances then existing. The burden of proof is on the defendant to show that the plaintiff was negligent and that his negligence contributed to his injury. Inland & Seaboard Coasting Co. v. Tolson, 139 U.S. 551, 11 S.Ct. 653, 35 L.Ed. 270; Washington & Georgetown R. Co. v. Harmon's Adm'r, 147 U.S. 571, 13 S.Ct. 557, 37 L. Ed. 284. This doctrine was approved in

Loprestie v. Roy Motors, Inc. et al., 191 La. 239, 185 So. 11.

In the case of Woodley & Collins v. Schusters' Wholesale Produce Co., Inc., 170 La. 527, 128 So. 469, in discussing whether or not the driver of an automobile should be deemed negligent for failing to slow down, we stated that it depended on the circumstances of the particular case, and that it is not easy, nor safe, to lay down a hard and fast rule on the subject. The difficulty in laying down a hard and fast rule is that the act provides that the conditions and circumstances must be considered as well as the traffic, surface and width of the highway, and the location of the neighborhood. Such being the case, the particular facts of each case must be considered in arriving at a conclusion, and it would not be safe to lay down a hard and fast rule for that reason.

In the case of Louisiana Power & Light Co. v. Saia et al., La.App., 173 'So. 537, the court stated in effect that a great many cases have held that the failure of the driver of a moving vehicle to observe an obstruction—usually in the form of a stationary vehicle—constituted such negligence as would prevent recovery, and cited many cases to that effect; but, the court aptly said in effect that this result had not been reached regardless of surrounding circumstances and facts. In fact, the courts have been careful to say in each case that no circumstances were involved that would justify the failure of the driver to see the object ahead. It would appear that this is a reasonable interpretation of the provision of Act No. 21 of

1932, aforementioned, because it specifically provides that the conditions and circumstances must be considered. While the general rule makes it the duty of the driver of an automobile to maintain a speed sufficiently slow and to have such control of his car that he can stop within the distance in which he can plainly see an obstruction or danger ahead, yet it has been well recognized that this rule has exceptions and modifications. Jacobs v. Jacobs, 141 La. 272, 74 So. 992, L.R.A.1917F, 253.

In Kirk v. United Gas Public Service Co., 185 La. 580, 170 So. 1, this court stated that the general rule is not inflexible, and that its application depends on the facts and circumstances of each case. Many cases were cited therein where the rule was relaxed and the driver of the automobile exonerated from negligence.

Many cases have held to the effect that ordinarily a motorist is negligent in not slowing down to a speed at which he can stop instantly when blinded by headlights. However, a careful examination will reveal that the circumstances and facts of each case were taken into consideration in arriving at a conclusion. Also, it has been held in many cases that a motorist was guilty of negligence because he failed to see the obstruction or object in time to stop before colliding with it; but, the facts and circumstances of each case have been considered in determining whether or not the motorist had sufficient reasons for not seeing the object or obstruction in time to stop.

In the case of Moncrief v. Ober, 3 La. App. 660, it was held that a small cable

stretched above the surface of a public road was such an unusual obstruction that the failure of a motorist to detect it did not indicate negligence on his part.

In the case of Kirk v. United Gas Public Service Co., supra, wherein a motorist saw an object ahead of him in the road which he thought was a shadow or repaired patch in the road and did not observe that it was a dead yearling until a moment before it was struck, when it was too late to stop, we arrived at the conclusion that it would be unreasonable to hold the motorist negligent in failing to see the yearling sooner than he did.

From the facts certified it appears that the plaintiff was driving at a moderate rate of speed, between 40 or 45 miles an hour, on an open highway, with his car properly lighted, and that he slowed down to between 20 and 25 miles an hour on meeting the approaching cars. There is nothing to indicate that the neighborhood within the vicinity was thickly populated. There is nothing in the facts to indicate that the location was such that the plaintiff would expect cars to be parked on the highway, as would be expected where the location was thickly populated. It appears that the plaintiff was travelling at such a speed, after he slowed down, to enable him to meet an ordinary emergency under the circumstances. If the truck had been parked entirely on the pavement the plaintiff could more easily have seen the wheels and running gear, but the truck was parked at an angle on the edge of the highway with the body extending out into the road some three or four feet above the ground, and some four feet beyond the rear wheels. It was the duty of the plaintiff when meeting the approaching cars to dim his lights. When he dimmed the lights the beam was necessarily thrown down on the highway, causing it to shine under the rear end of the truck, which was protruding some distance over the road. Under these circumstances, we do not think the plaintiff was negligent in failing to see the truck sooner than he did.

For the reasons set out above, our answer to the first question is that we cannot lay down a hard and fast rule to govern in these types of cases because so much depends upon the circumstances of each particular case.

Our answer to question two is that under the facts outlined the plaintiff was not guilty of contributory negligence.