Plaintiff seeks to recover for the cost of repairing his automobile which was damaged when he drove it into the rear end of a stationary truck of Pan American Liquor Company, at night on the highway between Westwego, La. and the Mississippi River Bridge, just above New Orleans. The defendant is United States Fidelity Guaranty Company, the liability insurance carrier of Pan American Liquor Company, the owner of the truck.
There is practically no dispute about the facts and the amount sued for is not in contest, defendant conceding that the record contains no proof other than that submitted by plaintiff as to the cost of the repairs to the truck. Though the negligence of the driver of the truck is not conceded, the question of whether he was at fault is not seriously in dispute, and the sole defense is that plaintiff, himself, was guilty of contributory negligence which bars his recovery. *Page 39 
In the First City Court for the City of New Orleans there was judgment dismissing plaintiff's suit and he has appealed.
The accident occurred at about 9:15 on the night of November 15, 1944. So far as the record shows the weather was clear. The scene of the accident was the black topped highway between Westwego and the Mississippi River Bridge. The highway at that point has a width of approximately 20 feet with a very narrow shoulder on the river side thereof. The truck of the Pan American Liquor Company had been proceeding from Westwego towards the bridge when it became disabled. Monroe Turner, its driver, stopped it on the highway. He sent a helper to telephone for assistance and then got back into the truck to wait for the arrival of help. The headlights on the truck were burning, the tail light was not burning. The clearance or sidelights on the truck, according to the driver, were also burning. While the truck was in that position, it was run into from the rear by plaintiff, who was driving his 1942 Pontiac in the same direction in which the truck had been going.
The record does not show the nature of the surrounding country but there is nothing to indicate that it was not an ordinary country road with very few, if any, houses nearby.
Hemel seeks to explain his failure to see the truck, and to stop in time to avoid striking it, by showing that coming down the road in the opposite direction were several automobiles, the headlights of the last of which suddenly dazzled him and prevented his seeing the truck in the roadway ahead.
He says that he had been driving at a speed of about 35 miles an hour and that he reduced this speed by from 5 to 10 miles an hour as he noticed the other automobiles coming towards him from the other direction. His statement is that the first two of these three automobiles dimmed their lights for him but that the third one, the lights of which had been screened to some extent by the second, suddenly flared up in front of him, blinding him and that before he could stop his car or discover that there was anything in the roadway ahead, he had crashed into the rear of the truck, after unsuccessfully attempting to swerve around it.
[1] While in innumerable cases it has been held that, regardless of the primary negligence of the person who has left the other vehicle or obstruction in the road, the failure of the operator of a motor vehicle to stop his car before running into a stationary vehicle or other obstruction in the road ahead of him constitutes such contributory negligence as will prevent recovery for injuries to him or for damage sustained by the vehicle driven by him, it has also been definitely established in our jurisprudence that this result should be reached in each case only after taking into consideration all of the circumstances and facts surrounding the particular occurrence.
In other words, the mere fact that the operator of a moving vehicle drives it into the rear of a stationary one on the road ahead of him, does not, as a matter of law, prevent his recovery unless it appears from the facts surrounding the occurrence that he was at fault in doing so. A full discussion of the jurisprudence on this subject is to be found in Gaiennie v. Cooperative Produce Co., 196 La. 417, 199 So. 377 and in Louisiana Power Light Co. v. Saia, La. App., 173 So. 537.
[2] In the Gaiennie case there was involved an accident remarkably similar to that which we are now considering and our brothers of the First Circuit, under the provisions of art. 7 of Section 25 of the Constitution of the State, certified the case to the Supreme Court for instructions as to the answers to the questions of law submitted. The Supreme Court answered that under the facts found, the plaintiff, who was the driver of the moving car which ran into the stationary truck was not guilty of contributory negligence.
In the Gaiennie case [196 La. 417, 199 So. 379] the Supreme Court said: "* * * The law applicable to determine whether or not the plaintiff was guilty of negligence would be Act No. 21 of 1932, Section 3, Rule 4, paragraph (a), which makes it unlawful for any person to drive a motor vehicle upon the roads and highways of *Page 40 
this State at any other than a careful, prudent, reasonable and proper speed, having due regard to the traffic, surface and width of the highway, the location and neighborhood, and any other conditions or circumstances then existing. * * *"
The statute applicable now is Act No. 286 of 1938. However, the rule quoted from the Act of 1932 in the Gaiennie case is identical with Rule 4 of Title II, section 3 of Act No. 286 of 1938 which now controls the situation.
Rarely indeed may it be said that two damage suits are so similar in fact that as a matter of law the decision of one compels a similar decision in the other, but counsel for plaintiff in the case at bar insists that such is the case here, and that the facts of the present case cannot be distinguished from those of the Gaiennie case.
We think we see at least three differences. In the first place, in the Gaiennie case, although it was found that the headlights on the stationary truck were burning as were the headlights in the case at bar, the clearance lights on the side of that truck were not burning, whereas here the driver of the truck testified that the clearance or side lights were burning and plaintiff, Hemel, though he makes the general statement that the lights were not burning, does not refer to the clearance lights and does not categorically deny the truth of the statement of the driver of the truck that these lights were burning.
In the second place, whereas in the case at bar plaintiff says that three cars were approaching from the other direction, he says that the driver of only one of these, the last, failed to dim his headlights, whereas in the Gaiennie case "there were four or five cars following each other and all of them with the headlights burning so brightly as to dazzle his eyesight intermittently."
In the third place, in the case at bar it is made plain by plaintiff, himself, that the stationary truck "was right in the center of the right lane", whereas in the Gaiennie case the Supreme Court laid great stress on the fact that "the truck was parked at an angle on the edge of the highway with the body extending out into the road some three or four feet above the ground and some four feet beyond the rear wheels."
The court said: "If the truck had been parked entirely on the pavement the plaintiff could more easily have seen the wheels and running gear."
That the clearance lights were burning and that the entire truck was in the road directly in front of plaintiff's car are differences which we think distinguish this case from the Gaiennie case. We are not so certain as to the effect of the other difference, i.e. that in this case there was only a pair of headlights which dazzled plaintiff whereas in the Gaiennie case there were four or five. If, for such considerable time Gaiennie had intermittently been dazzled by headlights, possibly there was a greater duty in him to even more substantially reduce the speed of his car than there was in the plaintiff here, who was suddenly confronted with only one pair of dazzling headlights.
But regardless of that fact, we think that the other differences weigh against the plaintiff here and require that we hold that the conclusion reached by the Supreme Court in the Gaiennie case is not controlling here.
The case does not come within that group in which there was something so unusual as to explain the failure of the driver of the moving vehicle to see the stationary one. Such cases are: Jacobs v. Jacobs, 141 La. 272, 74 So. 992, L.R.A.1917F, 253; Moncrief v. Ober, 3 La. App. 660; Kirk v. United Gas Public Service, 185 La. 580, 170 So. 1.
The case falls into the group in each of which it was held that the driver was contributorily negligent in not seeing what a reasonably careful and prudent driver would have seen and would have avoided. O'Rotirke v. McConaughey, La. App., 157 So. 598, 606; Hutchinson v. T. L. James Co. La. App., 160 So. 447; Bordelon v. T. L. James Co., La. App., 148 So. 484; Safety Tire Service v. Murov, 19 La. Ann. 663, 140 So. 879; Waters v. Meriwether Transfer Co., 18 La. App. 18, 137 So. 578, 581; Raziano v. Trauth, 15 La. App. 650, 131 So. 212; Sexton v. Stiles, 15 La. App. 148, 130 So. 821, 828; Blahut v. McCahil *Page 41 
La. App., 163 So. 195, 197; Woodley Collins v. Schusters' Wholesale Produce Co., Inc., 170 La. 527, 128 So. 469, 470; Louisiana Power Light Co. v. Saia supra.
The judgment appealed from is affirmed at the cost of appellant.
Affirmed.