ELLIS, Judge.
On a foggy Sunday morning at approximately 4:10 or 4:15 A.M. on October 21, 1951, the plaintiff was operating his Ford sedan in a, westerly direction along Highway 43 at a speed of “between 25 and 35 miles an hour,” in his proper lane of travel when he collided head on with a truck being operated by defendant D. V. Guidry, whom the testimony shows was in an intoxicated condition at the time and immediately afterward. Guidry was traveling in the opposite direction but in the plaintiff’s lane of travel.
Shortly after this collision, the plaintiff’s vehicle was struck from the rear by a vehicle owned and operated by Andrus Bressaux.
As a result of the collision plaintiff filed suit against Guidry and the insurer of Bressaux. The plaintiff charged Guidry with being under the influence of intoxicating liquor,' failing to keep a proper lookout and failing to keep his vehicle under proper control and operating same on the wrong side of the highway with utter disregard for the safety and lives of the public in general.
Plaintiff charged Bressaux with being guilty of gross negligence which proximately contributed to the collision “in that he failed to keep his vehicle under proper control, he was driving at an excessive rate of speed under the circumstances, say, 50 miles an hour, failed to keep a proper lookout at all times and failed to keep his vehicle under proper control at all times,” and further alleged the nature of his injuries which were serious and prayed for judgment accordingly.
After trial there was judgment in favor of the plaintiff and against the defendant, D. V. Guidry, in the full sum of $12,500 with interest and costs until paid. It was. further ordered, adjudged and decreed that there be judgment in favor of the defendant, Continental Casualty Insurance Company, dismissing plaintiff’s' suit at plain-tiff’s cost. It is from the judgment in favor of the insurer that the plaintiff has appealed. There was no appeal by Guidry from the judgment.
It is the contention of the plaintiff that both Guidry and Bressaux were guilty of separate negligence and their negligence was the cooperating or culminating cause of the injuries sustained by the plaintiff, and that, therefore, they are jointly and severally liable for these injuries. It is',therefore, necessary to decide whether Bressaux was guilty of any negligence under the facts and circumstances of 'the case, and it is clear that he can only escape if he comes under the exception to the general rule as established and recognized in Gaiennie v. Cooperative Produce Co. Inc., 196 La. 417, 199 So. 377; Louisiana Power & Light Co. v. Saia, 188 La. 358, 177 So. 238; Warnick v. Louisiana Highway Commission, La.App., 4 So.2d 607; Boland Mach. & Mfg. Co. v. Highway Ins. Underwriters, La.App., 22 So.2d 307; Rea v. Dow Motor Co., La.App., 36 So.2d 750; Cole v. Burgess, La.App., 31 So.2d 450; Watts v. Spikes, La.App., 60 So.2d 242; Columbia Fire Ins. Co. v. Black, La.App., 61 So.2d 534.
If we should find Bressaux guilty of negligence then it would be necessary to decide plaintiff’s contention that his negligence and that of Guidry was the cooperating and culminating cause of the injuries sustained by the plaintiff and, therefore, they were jointly and severally liable.
In view of the fact that each case involving the question under consideration must be decided according to its own pe *139 culiar facts, circumstances and situation as .it existed at the time of the collision, it will be necessary that we review the testimony.
It is shown that the plaintiff had' left his home on Saturday afternoon at approximately 4:00 P.M. and'had played cards until approximately 4:10 A.M. on Sunday morning, when he left to return home1.' He testified the morning was foggy and that visibility was limited to approximately 60 feet and he was, therefore, proceeding at a careful speed of 25 to 35 miles pef hour, and that when he was within about 25 feet of the front end of the Guidry truck, which was approaching from the opposite direction but in plaintiff’s lane of traffic, he saw it and applied his brakes but it was too late to avoid the collision. After the collision he remembers nothing until approximately eleven or twelve A.M. the same day. In a purported statement he is quoted as haying said, “When I first saw the truck it looked like a large shadow coming toward me on my side of the highway.” He stated that he did not think he said this, however, we see nothing detrimental to his case even if he did say it. It is sufficient that he could not and did not see the truck until he was within 25 feet of him.
Plaintiff testified that just prior to the collision his lights were all on and in. goo.d working order and there is no doubt that after the collision none of the lights on either vehicle were burning.
A Mr. Helm who lived approximately 75 feet from the highway opposite the point of the collision was up' making coffee and heard the noise made by the two cars. He took a light, what kind is not shown, by the testimony and he stated he could see from 10 to 20 feet, and when he got out to the highway he saw the two cars and Guidry and ■when he went to the plaintiff’s car he ,was unable to open the door and he asked plaintiff if he was hurt and received no answer but he did hear him groan as if in severe pain. Plaintiff’s position at this time was described as “leaning over the left door of his car and on the steering wheel * * * between the door and the steering wheel * * * his chest seemed to be against the steering whéel.” Helm then started back to his home to phone-'for an ambulance and when' he had gotten about 75 feet from the plaintiff’s car, Bressaux*' car struck the rear of the plaintiff’s car. He went on and phoned and when he came back Bressaux was out flagging traffic and with his assistance they were able to open the door of the plaintiff’s car. It is definitely shown by this witness that there were no lights at all on the Guidry truck or the plaintiff’s car.
The plaintiff produced as a witness the State Trooper stationed at Lafayette, Louisiana, who came to investigate the wreck. He testified that the condition of the weather was “a little foggy”, and that visibility was approximately “50 or 60 feet”, however, under cross examination he stated “I don’t remember if it was foggy in some places or not but there was fog. You could- see 400 or 500 feet if you had good lights.” In view of the fact that both - plaintiff and Bressaux as well as the Trooper in one statement fixed the visibility at approximately 60 feet, we accept such testimony. It is further shown by the testimony that the Guidry truck and plaintiff’s car were a total loss and that it would take approximately $380 to repair the- front end of Bressaux’ vehicle, although the testimony describes the lick to the rear of the plaintiff’s car as “light” in comparison to the head on collision. The damages to the rear of plaintiff’s car showed a bent-in trunk and bent bumper. The Trooper further testified that as shown by his report Bressaux had statéd to him that his estimated speed at the time of the collision was 45 miles per hour and that the distance in which he first saw a sigh, of danger was approximately 20 feet. On re-cross examination he stated that his report indicated that Bressaux’ speed prior to the accident was 45 miles per hour and- at the moment of impact 15 miles.
Bressaux testified that he' was a married man 42 years of age with four children and that he was in the shoe repair business and also had a paper route and that at the time of the collision he was on his way from Lafayette to Breaux Bridge to dis *140 tribute papers to his customers. He testified that it was foggy, that his car -was in first class condition with lights, \yindshield wiper working and that the fog caused him to drive from 20 to 25 miles per hour. It is his. testimony that the first thing he saw was a white shiny streak' which turned out to be the bumper of the Bressaux car. He saw no lights and as .soon as he recognized the shiny streak as a bumper he put on his brakes, at which time he estimated he was a little over the length of his car from it which would be approximately 20 or 25 feet. He testified that ■ he was unable to stop before hitting the car but that at the time he was going slow. He was uninjured other than bumping his head, and got out and began to flag traffic and assisted in opening the door of'plaintiff’s car. He was questioned with regard to the statement made by the trooper that he was going 45 miles - per hour and answered: “I don’t want to say the man was wrong but I am sure he misunderstood me because I didn’t say that.” He again reiterated that he was not driving 45 miles per hour and he was sure that the trooper had misunderstood.
It appears that the only discrepancy in the testimony of Bressaux and the Trooper and Helm is the statement by the Trooper that Bressaux told him he was traveling 45 miles an hour prior to the collision, whereas he denied this statement and states that he was traveling 20 to 25 miles per hour on account of the fog. While the damage to the front end of Bressaux’ car amounted to some $380, all the witnesses testified that the damage was dúe not so much to the force of the blow as to the fact that the parts damaged were expensive and their conclusion was borne out by the fact that there was.very slight damage t.o the rear end of plaintiff’s automobile.
The testimony further shows that the plaintiff left skid marks of all four wheels on the highway for a distance equal to the length of his car.
Under the facts and circumstances, .the ■trooper evidently misunderstood Bressaux, for had he been traveling 45 miles per hour and struck the plaintiff at a reduced speed pf 30 or 35 miles per hour, it is mpre than .possible that..the damage would have been much greater.;. Then-if we accept, the fact that plaintiff was traveling a maximum :of 25 miles per hour, this was reasonable under the facts: and circumstances and due to the unusual conditions such as the fog and- the automobile in his lane of traffic without any lights, which is- not an ordinary anticipated hazard, he had his car under proper control so that he could meet the- ordinary hazards of. the road even though the. weather was foggy and visibility was limited. ■
' Therefore, if the plaintiff was unable to see Guidry’s truck approaching him with its ■ lights burning until it had reached a point approximately 25 feet from his car and he was not negligent under the facts and circumstances, then Bressaux was not negligent for his failure to be able to- observe the plaintiff’s car in his lane of traffic with no lights on it until he. was within approximately 25 feet- from the car. In other words, the plaintiff was met with a truck coming toward him with its lights burning and was unable to see it until too late, even ■though he was traveling at a moderate speed of 35 miles per hour and, yet, he ' would have us hold that Bressaux was negligent for his failure to see his car with no lights until he was approximately the same distance from plaintiff’s car as plaintiff was from Guidry’s'truck when he first observed it, and although Bressaux was traveling at a reasonable rate of speed under the, circumstances.
Due to the unusual facts and circumstances in this case Bressaux is not guilty of any negligence,. and the judgment of the District Court is therefore correct and is hereby affirmed.