ELLIS, Judge.
This suit was filed by the plaintiff and his collision insurer for the purpose of recovering for property damage and personal injuries as a result of an automobile collision which occurred Nov. IS, 1952 when plaintiff ran into the rear end of a cane truck and trailer belonging to the defendant, Lottery Winters. Suit was filed against Winters, his insurer, and Winter’s alleged employer, Clemire Norris.
Plaintiff alleged that the loaded cane truck was parked approximately one mile east of Erath on a paved highway of standard width, 18 feet, with shoulders measuring approximately 10 feet in width on each side of the pavement, without any lights of any kind burning thereon and without any warning signals of any kind displayed at or near the said truck, and at the time of the collision neither the owner of the truck nor any one else was situated at or near the truck; that the construction of the loaded cane trailer, its height from the ground and the fact that it was covered with dust, dirt and mud caused it not to be visible nor to reflect any light whatsoever; that plaintiff’s automobile was approaching a car coming from the opposite direction and he switched his headlights from bright to dim, decreased his speed, but that the bright headlights of the approaching automobile rendered it extremely difficult to see to the front “for an instant” and caused plaintiff to be temporarily “blinded” for a moment and “inásmuch as defendant’s truck was situated only a few feet West of the point at which assured’s automobile and the opposing automobile traveling in the opposite direction met, assured had no notice or warning of the presence of said truck on said highway and was granted no opportunity whatsoever to observe its presence and the perilous situation created thereby in time to avoid said collision;” that at the time of the collision “the weather was clear, the road surface was dry, and there were no artificial lights situated at, on or near said highway.”
The defendant’s answer was a general denial, and a specific denial of any relationship of employer-employee as to the defendants, Winters and Norris. Defendant further plead contributory negligence.
The case was duly tried and for oral reasons assigned judgment was rendered in favor of the plaintiffs and against the defendant Winters and his insurer. Judgment was rendered in favor of the defendant, Norris, rejecting the demands of the plaintiff. The defendant Winters and his insurer have appealed and the plaintiff has answered the appeal asking that the amounts awarded be increased to the sum prayed for in plaintiff’s petition and as thus amended affirmed.
It is clear that the plaintiff must remove this case from the general rule and place it in the exception thereto by proof that the cane truck was so situated, constructed and of such a color as to be most difficult to see at night and that, as he alleged, it was parked without flares, reflectors or lights and unattended and that he was blinded by the bright lights of the *256 approaching automobile, and although he reduced his speed he was unable to see the parked truck in time to avoid the -collision.
One of the first cases on the exception to the general rule upon which the plaintiff depends is Gaiennie v. Cooperative Produce Co., 196 La. 417, 199 So. 377. Also see Cole v. Burgess, La.App., 31 So.2d 450; Warnick v. Louisiana Highway Commission, La.App., 4 So.-2d 607; Rea v. Dow Motor Co., La.App., 36 So.2d 750. There are many other cases in which plaintiffs have recovered under the exception to the general rule and which it is not necessary to cite.
On Nov. 15, 1952 the plaintiff was returning from Delcambre traveling west toward Erath at approximately 7:30 p. m. and he saw an approaching car and dimmed nis bright lights whereupon the driver of the approaching car put his lights on bright and he stated: “That is the last I can recall.”
Also offered by way of deposition is the testimony of John Suire, a cousin of plaintiff, who stated that he was following the latter's car just prior to the collision, and that he realized that plaintiff had run into something and he immediately applied his brakes and they, being somewhat defective, pulled him to the left, so he went around plaintiff’s car and the truck and continued without stopping. At the time he did not know who was driving the car in the collision and as he was on Army leave and had a short time to reach Orlando, Florida he did not stop. This witness stated that he had started to pass the plaintiff but saw the car approaching and as he could not establish the distance he did not take a chance and it was about this time that the plaintiff collided with the rear end of the truck. Apparently the plaintiff never did see the truck for this witness doesn’t testify that plaintiff slowed down prior to the collision.
It is shown that plaintiff was traveling at a reasonable speed of 30 to 35 miles per hour at the time of the collision. Plaintiff stated that he did not see anything, flares, nor the truck, and the last thing that he recalls as he dimmed his lights was that the approaching car, he thought apparently through error, switched its lights to bright. Plaintiff, when asked how far the car approaching was from his car when he dimmed his headlights stated, “It wasn’t very far. I guess he was — I would say five or six cars, three or four cars, maybe further or closer. I couldn’t tell you exactly.” Plaintiff also stated that a short way out of Delcambre he had come upon another wreck in which a car had run into the rear of a parked cane truck. This accident occurred at the height of the cane hauling season and it is shown that these loaded cane trucks were to be expected on the highway.
Plaintiff indirectly stated that he was suddenly blinded by the headlights of the approaching car. When asked by his attorney: “* * * Were you traveling alone when you stated that these headlights suddenly blinded you?”, he answered, “I was, sir.” The witness John Suire makes no reference nor was he asked with regard to the bright lights of the approaching car but it is clear that the lights did not blind him as he successfully went to the left of the plaintiff’s automobile and tire truck and passed both in time to avoid any collision with the approaching car. In fact, he does not mention any fear on his part that he might collide with the approaching car before being able to successfully pass the automobile and truck. From his testimony and that of the driver and guests in the approaching car to the effect that they did not see or observe Suire’s car, the approaching car must have been, a greater distance at the time of the collision than the driver Overton Boudreaux and his wife estimated. According to their testimony they were very close to the front part of the truck.
Steven Theriot, witness on behalf of plaintiff, stated that he was traveling on the highway from Delcambre to Erath on the night of plaintiff’s accident, and he passed the latter just out of Delcambre, and that he was traveling approximately 35 miles per hour. This witness also passed the wreck in which an automobile had fun into *257 the rear of a cane truck, and stated that when he came to the defendant Winter’s truck it was necessary that he stop “because they had two cars in front of me that had stopped to cross the truck,” meaning to pass the truck. These two cars were directly in front of Theriot and he stated that the first one went around the truck and when the second one started to go around “he knocked down the light in the back,” and by light he stated he meant the reflector. His brother-in-law got out of his car and picked the reflector up and “put it in the same place,” which he stated “was a good piece” from the back end of the truck, however, he did not measure the distance. Theriot did not see any lights of any kind burning on the truck or trailer. Theriot proceeded to Erath and then came back along the same highway and the collision had occurred. This witness also stated, in answer to a question by the court, that there was a reflector in the front of the truck. Theriot estimated the distance from the stop light at Delcambre where he passed the plaintiff to Erath as being two to three miles. At most plaintiff must have struck the rear end of the cane truck within four minutes after Theriot passed him if we use the speed of 30 miles per hour traveling a distance of two miles. According to the testimony of the State Trooper the accident occurred approximately one mile east of Erath.
Plaintiff offered the testimony of Mrs. Overton Boudreaux who was riding with her husband in the approaching car which plaintiff stated turned its lights on bright just prior to the collision. Both Mr. and Mrs. Boudreaux testified that they did not see John Suire’s car and yet they state that they were within fifteen or twenty feet of the front end of the truck at the time the plaintiff collided with the rear end. This estimate is evidently in error and impossible, else John Suire would never have been able to safely pass plaintiff’s automobile and the truck, and even if it had been a little further and he had been able to squeeze by, it would seem that he would certainly have mentioned the extreme closeness and narrow escape from a collision with Boudreaux’ approaching automobile. Furthermore, Boudreaux testified that there was a reflector in front of the truck about 15 feet, and John Suire stated that he did not see a reflector at the rear of the truck, which is correct as the rear reflector was found knocked down after the collision, and John Suire evidently did not turn back in front of the truck until after he had passed the reflector or he would have knocked it down.
The Boudreauxs further stated that they were almost on the Winter’s truck before they saw it, and they saw a car approaching which was the plaintiff’s, “at a moderate speed, 30 or 35 at the most,” but Mrs. Bou-dreaux did not recall whether the lights on plaintiff’s approaching car were on bright or dim. Mr. Boudreaux stated he thought that they were on dim and he stated, “No I didn’t see him dim; they were on dim,” but he did not remember whether his lights were on dim or bright. With regard to the parked truck, they stated that it was in the north lane of traffic on the pavement and they saw a reflector about 15 feet in front of the truck which they noticed at approximately 35 or 40 feet, and they saw one in the back that had been knocked down which was after the collision, and there were no lights burning on the truck or the trailer when he was approaching. Mr. Bou-dreaux testified that one car passed around the Plaintiff’s car and the truck at the time of the collision and that there was not a car within 50 yards at that time.
The State Trooper David testified that he came to the scene of the wreck shortly after it happened on Louisiana Highway 25 about one mile east of Erath and found the truck parked on the right lane of the highway facing west, and that the front lights were burning but none were burning on the rear. “The rail lights were demolished at the time of the accident. Whether he had one .on or not burning at the time of the accident, I can’t testify to that.” This Trooper noticed a reflector to the rear end of the truck that had been hit and “was close to the truck, all tore and demolished.” He also testified that he noticed a reflector in front of the truck and he. caused to be *258 displayed flares at the front and fear at approximately 100 feet. The trooper stat-. ed that the type of reflector that he saw in' front and to the rear of the truck were the kind approved by the State Police and. it was shown that they were approximately four inches in diameter. This trooper was asked if he remembered specifically what lights he saw burning and he' testified:
“A. That was the headlights; the front lights of the truck.
“Q. The headlights were on? A. Yes, sir; as far as clearance lights, they didn’t have none.
“Q. They didn’t have any on the trailer? A. No, and the tail lights was totally demolished.
"Q. When you got there the headlights were burning, the tail light was demolished, and there were no clearance lights ? A. That’s right, sir.”
The Trooper testified positively that the front reflector had been placed approximately 100 feet from the truck. Along this line he testified:
“Q. Do you remember whether those were put even with the reflector that had been previously put there or closer to the truck or farther out?
A. That is one tiling I can’t verify, but I made them put it apparently one hundred (100) feet ahead of the truck, which was that front reflector'; it was in front of the truck, which was displayed apparently one hundred (100) feet ahead of the truck, and the one in the rear — at the time I had it displayed they had no reflector there because it had been busted, and I had it put apparently one hundred (100) feet on the rear.”
We are of the opinion that plaintiff’s testimony precludes his recovery as it is definitely shown by his witnesses that there was nothing extraordinary about the weather on the night of the accident, in fact, he alleged and it is shown by the testimony that' it was a dark, clear night. It is further ’Shown that three cars safely' passed this parked truck just a few minutes before the plaintiff collided with the rear end without ever seeing it. It is also shown that there was a reflector according to the State Trooper approximately 100 feet in front of this truck and a demolished reflector close to the rear end and which it is safe to assume was struck by the plaintiff. There was a reflector to the rear of the truck as testified to by the plaintiff’s witness, Theriot, and it was knocked down by. the car just in front of him when it turned out to pass the truck, and his uncle got out and stood the reflector up, showing that it was not damaged to any extent, at that time. The Boudreaux testimony insofar as the reflector being 15 feet in front of the truck is discredited by the State Trooper and, further, their testimony that no one came around the truck at the time of the collision or just subsequent to it is discredited by that of John Suire. It is our belief from all the testimony that the Boudreauxs were much farther from the parked truck at the time of the collision then they have testified.
Defendant offered the testimony of Reno Dugas who stated that he approached the parked Winter’s truck and saw a reflector in front of it as well as the parking lights burning on the truck, and after passing the truck he also saw the reflector in the back' but did not remember seeing any reflector on the side. It appears that this witness had given a statement to counsel for plaintiff that he did not remember whether there were lights burning on the truck and he admitted that he could have been mixed up in that he also saw the other cane truck which had been run into on the same evening.. This witness really thought that the lights were burning on defendant’s truck. He also gave a statement to counsel for defendant in which he stated that he def.-’ initely saw three reflectors but did not re-' member if his “parking lights were burning.” On the trial he said, “About them three reflectors, I don’t remember that middle one.”
Joseph Guidry, another witness on behalf of the defendant, stated that on that evening he was hauling cane and had gone to *259 carry “another fellow” that had a flat tire, and on his way back he picked up the defendant Winters who flagged him down near his parked truck, and at that time this witness stated that the tail lights on the Winter’s truck were burning and he saw a reflector on the left hand side and in the back of the truck. He took Winters to Abbeville to the sugar mill to get a tire to replace the one that had blown out on the right hand side of his truck, and when they got back the accident had happened. It was this witness’ testimony as well as that of defendant Winters that it was impossible to drive a loaded cane truck such as his off on the shoulder of the road when one of the tires was down as it would turn over. This witness’ testimony was that he could see the Winters truck half a mile and he also testified that he had three lights burning on the left hand side of the trailer and one on the right and one tail light, and his parking lights which consisted of three lights on top of the cab. He stated that these lights were burning when he got back with Winters. In this he is mistaken as it is shown by other testimony that the tail lights were demolished. This witness seemed to be leaning in his testimony toward the defendant, just as the Boudreauxs seemed to be leaning toward the plaintiff. He did place the reflectors approximately 100 feet to the front and rear of the truck.
The defendant Winters testified that he hauled cane from the defendant Norris’ derrick, and it is shown that other persons brought cane to this derrick and that on the night of the accident no one could testify whose cane Winters was hauling; that his arrangement was to haul the cane for 75‡ a ton to either the mill at Erath or Abbe-ville; that on the night in question a tire blew out and he had to leave his truck parked on the highway. He stated that he left his parking lights and his tail light burning as well as his clearance lights on the left hand side, and that immediately after the wreck he put one reflector in the center to the left of the truck, one in front and one in the back at a distance of about 30 or 40 steps. This witness stated that when he got back the lights were burning and the reflectors were still there. Of course, he is mistaken in this testimony as .the tail light was demolished and there were no clearance lights burning after the collision according to the State Trooper.
The only facts which were proven that could bring the plaintiff under the exception to the general rule were that this cane truck was so constructed and so covered with dirt and mud as to render it almost invisible, and the fact that the plaintiff testified that the approaching Boudreaux automobile turned its lights on bright just before the collision. It must be remembered, however, that the collision did not take place after the plaintiff passed the Boudreaux automobile but before the Boudreaux automobile ever got to the parked truck and it was a sufficient distance that had plaintiff seen the truck he could have gone around it and would not have collided with the approaching Boudreaux car, as John Suire, who was immediately following the plaintiff, swerved and safely passed the plaintiff’s automobile and the truck. Were we to accept only plaintiff’s testimony we believe he is guilty of contributory negligence. He and the Boudreaux car were only approximately 100 feet apart, when he dimmed his lights and Boudreaux switched to bright, and it is well to remember that plaintiff at that time, before any changing of lights had taken place, was traveling with his bright lights on and the Boudreaux car was traveling with the dimmers on. It is to be remembered that in between these two oncoming automobiles was this parked cane truck and trailer. It is to be remembered 'further that prior to the switching of the lights, plaintiff does not complain of being blinded by the oncoming lights of the Boudreaux vehicle. That being the case, we are at a loss to understand why plaintiff could not have seen the parked truck and trailer prior to this time. If he had been looking, and he says he had his lights on bright and the Boudreaux vehicle lights were on dim, there is no reason for his not being able to see the parked vehicle in his lane of travel because he was not blinded at that time. It was only after they were approximately 100 feet apart, with the parked truck in be *260 tween them, that the plaintiff switched his lights from bright to dim and he says that the Boudreaux vehicle then switched their lights from dim to bright, which then blinded him. The plaintiff should have seen this parked loaded cane truck which is a monster in itself just in front of him long before the switching of the lights took place. Plaintiff’s negligence had been contributed a long time before the switching of the lights by not observing the big cane truck parked in front of him, because, when the switching of lights took place and he became blinded so he claims, and we are accepting his testimony as true, it was not the blinding of the lights that caused the accident but it was the joint negligence of the defendant in parking as he did, accepting that as proven, and the negligence of the plaintiff in not observing the cane truck or rear reflector prior to the time Boudreaux switched his lights to bright. This record reflects no extra-ordinary circumstances which would cause the plaintiff to be unable to see this parked vehicle. The road was straight, the atmospheric condition was perfect, there was a reflector of legal size to the rear of the parked cane truck which had been observed by three motorists who stopped to let approaching traffic pass the parked truck. Plaintiff was not keeping a proper lookout.
For the above and foregoing reasons, the judgment of the District Court is reversed and plaintiff’s suit dismissed at his cost.