LOTTINGER, Judge.
Petitioner, Leon A. Noland, filed this suit for personal and property damages resulting from an automobile collision. The defendants are Jack Goudeau, the driver of the other vehicle, Wolf’s Bakers, Incorporated, Goudeau’s employer, and Liberty Mutual Insurance Company, the liability insurer of Wolf’s Bakery.
The Lower Court rendered judgment in favor of the defendants. Petitioner has taken this appeal.
The facts, which are substantially agreed upon, show that in the early morning hours, before daylight, on August 7, 1954, the petitioner was driving his automobile south toward Baton Rouge on Scenic Highway, at about eight miles north of the Village of Scotlandville. At the same time, defendant, Jack Goudeau, was driving a truck belonging to Wolf’s Bakery in a northerly direction on the same highway. The highway was black-topped a width of about twenty feet. In addition thereto, there were shoulders of about four feet wide on each side of the black-top. As the auto and truck neared the scene of the accident, the evidence discloses that the auto of petitioner had just completed a curve to its right, and petitioner testified that he could see the. truck’s headlights for a distance of some 1600 yards before he reached the curve. The truck was proceeding on a straight road, and at a speed of about 47 miles per hour. The car was going at a speed of about 30 or 35 miles per hour. At a distance of about fifty feet south of the curve, a car belonging to a person by the name of Sims was parked partially in the defendant’s truck’s lane without lights or signals at about a 45 degree angle and with its right front and two rear wheels on the shoulder, and its left front wheel on the black-top. Testimony indicates that the front left of the Sims’ car encroached about three feet on the black-top.
Petitioner’s car and defendant’s truck met just opposite the parked Sims’ car. *430 The truck, for some reason unknown to its driver, swerved into its left lane and sideswiped the petitioner’s car, while petitioner’s car was well in its own lane.
The only question in dispute was as to the condition of the headlights on the petitioner’s vehicle. Petitioner claims that he was driving with his lights on dim the whole while. The defendant driver, on the other hand, contends that he saw ■Noland’s lights approaching before Noland came around the curve, north of Sims’ car, and stated further that as Noland’s car came around the curve that Noland’s lights “hit me in the face that’s when I asked for dim,” and that when he asked petitioner for dimmers, he was about 75 to 100 feet south of the point of impact and that petitioner immediately gave them to him. On receiving the dimmers from petitioner, defendant claims that he saw the Sims’ vehicle and immediately applied his brakes. State Police officers measured the defendant’s skid marks at 75 feet.
The Lower Court found the defendant driver guilty of primary negligence, and found petitioner guilty of contributory negligence. Petitioner’s suit was, therefore, dismissed in the Lower Court, and petitioner has taken this appeal.
There is no question that the vehicle of Sims was so parked partly in the road as to constitute a hazard. The question which first enters our minds is whether the driver of the defendant’s vehicle was guilty in failing to see this hazard under the circumstances of this case. The general rule, as stated by us in Washington Fire & Marine Insurance Co. v. Travelers Indemnity Co., La.App., 86 So.2d 743, 745, is as follows i
“In the case of Buford v. Combs, La.App., 50 So.2d 469, 476, we used the following language:
“ ‘ “The general rule is well established in this State to the effect that it is the duty of the operator of an automobile, while driving at night, to operate said automobile in such a manner that it can be stopped within the range of vision illuminated by the headlights of the car. It is also well settled that there may be exceptional circumstances which will serve to exculpate a driver who, because of those exceptional circumstances and in spite of due diligence, fails to discover some obstruction or some other vehicle on the road ahead of him, and that no fixed rule may be laid down by which it may be determined just what will constitute such exceptional circumstances. Woodall v. Southern Scrap Material Co., La.App., 40 So.2d 495; Hemel v. United States Fidelity & Guaranty Co., La.App., 31 So.2d 38; Gaiennie v. Cooperative Produce Co., Inc., 196 La. 417, 199 So. 377; Louisiana Power & Light Co. v. Saia, 188 La. 358, 177 So. 238; Dodge v. Bituminous Casualty Corporation, 214 La. 1031, 39 So.2d 720; Rea v. Dow Motor Co., La.App., 36 So.2d 750.
“ ‘ “The facts in the cases of Gaiennie v. Cooperative Produce Co. and Dodge v. Bituminous Casualty Corporation, supra, both of which were decided by the Supreme Court, are similar •to the facts in the case now being considered. In the Gaiennie case, (196 La. 417, 199 So. 378) the vision of the plaintiff was ‘momentarily and intermittently impaired’ by the lights of approaching cars, and in meeting these cars he dimmed or deflected his lights so that the tilted beam of his headlights projected under the body of the parked truck, making it more difficult for him to see the truck. The body of the truck was suspended some three or four feet above the ground and extended back about four feet over the rear wheels. The Court held in that case that because of the exceptional circumstances, the general rule did not-apply and that plaintiff was not contributorily negli *431 gent in running into the rear of the parked truck.
“ ‘ “In the Dodge case plaintiff’s vision was impaired by approaching vehicles, but there is nothing in the opinion of the Court to indicate that plaintiff dimmed or deflected his headlights. And there is no mention in the opinion as to the distance the body of the truck was suspended above the ground, the distance it extended behind the rear wheels, or the color or design of the body of the parked vehicle. The evidence simply showed that plaintiff’s visibility was affected by the lights of oncoming traffic, and because his visibility was so affected, he did not see the unlighted truck parked at an angle on the highway until he was right on it. Under those circumstances the Supreme Court held that plaintiff was not contributorily negligent in colliding with the parked vehicle.” ’
“In the Combs case we concluded that the driver of the car approaching from the rear could not, because of the exceptional circumstances existing, be charged with contributory negligence.”
Now the position of the driver of the defendant vehicle is similar to the position of the drivers of the overtaking vehicles in the above cases. Assuming, as is claimed by defendant, that the petitioner was driving with bright lights until the defendant asked for dimmers, we find the situation where the visibility of the approaching defendant driver would be greatly impaired. This fact, combined with the peculiar position of the Sims automobile in the roadway, would, we believe, come within the exceptions to the general rule as outlined about. Assuming, on the other hand, that the petitioner was driving with his lights on dimmers, as is claimed by-petitioner, we feel that the defendant’s vision would still be affected to such an extent as to render him unable to see the parked car under the peculiar circumstances here found.
The evidence indicates to us that the defendant was. driving at a speed of : from slightly in excess of 40 to 47 miles per hour. Blashfield Cyclopedia of Automobile Law and Practice Volume 9C, Sectipn 6237 states that an automobile traveling at.40 miles peí hour would require a braking distance of 71 feet to come to a stop after the brakes have been applied, and at that speed the average driver reacts to a warning in % of a second during which time the automobile has traveled 44 feet, and that traveling at the rate of 50 miles per hour requires a braking distance of 111 feet after the brakes have been applied, and that the average driver’s reaction time traveling at said speed of 50 miles per hour amounts to approximately 55 feet. As the skid marks of the truck prior to the collision were seventy-five feet in length, it was, therefore, evident that defendant was driving at least slightly greater than forty miles per hour. On the other hand, the evidence discloses that the truck had a governor, and that its top speed was forty-seven miles per hour. It is, therefore, clear that the truck was traveling at a speed of 47 miles per hours, or less. Although the defendant testified that he first noticed the parked vehicle when he was only about 75 to 100 feet from it, it appears that he must have been some greater distance away when he first noticed the parked vehicle as there must have been some reaction time before he actually applied the brakes. Even considering, for the sake of argument, that the truck was going at a speed of 47 miles per hour, which is in excess of the speed limit (45 miles per hour for trucks, LSA-R.S. 32:225 as amended by Act No. 547 of 1954) we do not'believe that such would have been a proximate cause of the accident.
It is our opinion that the defendant driver was guilty of no act of negligence which would make him primarily liable for the accident. The illegally parked vehicle of Sims, in that peculiar position or angle, coupled with the lights of the oncoming car of petitioner, constituted a trap which was unseen, and impossible to be seen, by *432 the defendant driver until it was too late. Faced with the sudden emergency of the impending collision, the defendant driver immediately applied his brakes in an attempt to bring his truck to a stop, and to avoid the accident. Faced with this sudden emergency,' not of his own making, we do not feel that he can be held accountable for swerving into the left lane of traffic. Had the roadway been just a bit wider his action might have avoided the accident.
The Lower Court found the defendant to be guilty of primary negligence, and found the petitioner to be guilty of contributory negligence. We feel that this was error on the part of the Lower Court, as we have found no primary negligence on the part of the defendant. However, the judgment of the Lower Court was correct, in that there was judgment for defendant and petitioner’s suit was dismissed.
For the reasons assigned, the judgment of the Lower Court will be affirmed, all costs of this appeal to be paid by petitioner.
Judgment affirmed.