JANVIER, Judge.
The automobile crash from which this suit results occurred on what is known as the Airline Highway which extends from New Orleans to Baton Rouge. The point of impact was at the Baton Rouge end of the overpass located within the limits of the Town of Kenner a short distance to the west of the New Orleans airport.
Mrs. Ellis was driving her car towards New Orleans. The other car, a taxicab, after delivering a passenger on the right or north side of the highway, was in the process of making a U-turn to return to New Orleans. The highway at that point consists of four lanes, two of which accommodate vehicles going towards New Orleans, the other two being used by vehicles going towards Baton Rouge.
The accident took place before daylight, on the morning of February 8, 1957. Because of fog, visibility was limited to a distance of between 75 and 100 feet. Just before the taxicab had completed the U-turn into the farthest or right-hand lane on the other side of the highway, it was struck on the right rear and rear end of the right side by the car driven by Mrs. Ellis. Her car sustained damage, the repairs of which were fixed by stipulation at $284. She sustained physical injuries and brought this suit against Sam Taylor, the operator of the taxicab, Emile Livingston, its owner, and Nola Cabs, Inc., the liability insurance carrier of the other two defendants. She prayed for solidary judgment against all defendants in the sum of $16,742.13, charging that the accident resulted solely from the negligence of the driver of the cab in making “a U-turn on a busy overpass without proper regard for oncoming traffic,” and in failing to “give proper signals.” and in many other particulars.
Defendants, admitting the occurrence of the accident and denying that there was any negligence on the part of the cab driver, alternatively charged that Mrs. Ellis was contributorily negligent in driving at an excessive rate of speed — 50 miles per hour —in a 30-mile speed zone on a foggy morning, in failing to maintain a proper lookout, and in failing to exercise proper control over her car.
There was judgment in favor of plaintiff against all three defendants solidarily in the sum of $2,500. All have appealed suspensively. Plaintiff has answered the appeal praying that the amount awarded be increased to $5,913.96 so as to provide for special damages such as medical expenses, loss of salary, property damage, and also for an increase in the amount awarded her for physical injuries, pain and suffering.
There can be no doubt of the negligence of Taylor, the driver of the cab. He was attempting to make a U-turn on an extremely busy highway on a foggy night without making certain that it was safe for him to do so. While defendants do not admit this, they rely almost entirely on the charge of contributory negligence, maintaining that Mrs. Ellis, because of the fog, should have reduced the speed of her car sufficiently to permit her to make certain that her vehicle could be brought to a stop within the range of vision which was substantially reduced because of the said fog.
*148 The record does not justify the conclusion that the speed of plaintiff’s car was excessive. All that we can say from the record is that it was about 20 or 25 miles an hour. Counsel for defendants argue that such speed and with a visibility of 60 to 100 feet, Mrs. Ellis should have seen the taxicab ahead of her and should have stopped before striking it.
The cab had not completed its turn, had not straightened out in the direction of New Orleans and consequently had not proceeded for any distance in that direction when it was struck. Taylor himself says “I had not completed my turn.” One of the highway officers who reached the scene shortly after the crash said that when he got there, to the best of his memory, “the vehicles were still intact.” The District Judge interpreted this statement to mean that the vehicles “were still touching each other.” This officer said that the taxicab had not straightened out in the lane towards New Orleans, but “was facing more to the river.”
.Counsel for the defendants rely on many decisions to the effect that a driver must see what is in the road ahead of him and that therefore when a following car strikes another which is moving or is standing on the highway, the driver of the following car is guilty of negligence.
There are exceptions to this rule and the facts here evidence such an exception. The taxicab was not in the road ahead of Mrs. Ellis’ car for any appreciable time, but suddenly, from the side, entered the lane on which she was driving when she no longer had an opportunity to stop her car.
That there is such a general rule as is contended for by defendants and that there are exceptional situations such as are contended for by plaintiff is shown by the following statement of our Brothers of the First Circuit in Buford v. Combs, 50 So.2d 469, 476:
“The general rule is well established in this State to the effect that it is the duty of the operator of an automobile, while driving at night, to. operate said automobile in such a manner that it can be stopped within the range of vision illuminated by the headlights of the car. It is also well settled that there may be exceptional circumstances which will serve to exculpate a driver who, because of those exceptional circumstances and in spite of due diligence, fails to discover some obstruction or some other vehicle on the road ahead of him, and that no fixed rule may be laid down by which it may be determined just what will constitute such exceptional circumstances. Woodall v. Southern Scrap Material Co., La.App., 40 So.2d 495; Hemel v. United States Fidelity & Guaranty Co., La.App., 31 So.2d 38; Gaiennie v. Cooperative Produce Co., Inc., 196 La. 417, 199 So. 377; Louisiana Power & Light Co. v. Saia, 188 La. 358, 177 So. 238; Dodge v. Bituminous Casualty Corporation, 214 La. 1031, 39 So.2d 720; Rea v. Dow Motor Co., La.App., 36 So.2d 750.”
The District Judge obviously felt that the exception is applicable here. He was not manifestly in error.
The plaintiff sustained a strain of the cervical and lumbo-sacral spine and was still under treatment of Dr. J. Willard Dowell when he gave testimony by deposition on November 29, 1957, which was more than nine months after the accident. Dr. John A. Colclough examined the plaintiff first on October 11, 1958, and found “a curvature of the spine” which he said could have been caused by the accident. Dr. George D. B. Berkett, testifying on behalf of defendants, thought that it had not been caused by the accident.
The plaintiff lost twenty-seven days from her work and states that her injury prevented her from playing golf and from knitting. While there is some effort to prove actual expenses, the evidence falls short of positively showing most of the *149 amounts claimed. Plaintiff did testify that she had paid $35 to Dr. Dowell and $40 for X-rays, together with $10.86 in medical hills. There is evidence that a medical expert stated that his charge would be $150 and the District Judge said that he would fix the fee of this expert at $100 and that he would be entitled to an additional $50 for office examinations.
In view of these various items of damage, including the cost of repairing the automobile, we think that the amount allowed should be increased by $500, and that the fee of Dr. Colclough as an expert amounting to $100 should be taxed as costs.
Accordingly, the judgment appealed from is amended by an increase in the amount thereof to $3,000; in all other respects the judgment is affirmed; defendants to pay all •costs.
Amended and affirmed.