ELLIS, Judge.
This is a suit in which the plaintiff seeks to recover damages for personal injuries sustained when his automobile collided with the rear of a truck owned and operated by James Brumfield and insured by Canal Insurance Company.
After trial on the merits, there was judgment in favor of plaintiff, Robert L. Mc-Nabb and against the defendants, James *22 Brumfield and Canal Insurance Company, for policy limits of $5,000.
The accident occurred on Louisiana Highway 51 near Areola, Louisiana, at about 6:00 o’clock P.M. on November 23, 1957. At the time of the accident, it was dark and was raining. The highway at the site is a straight, hard surfaced, two lane road. Defendant, James Brumfield, was proceeding south in a bob-tail pulpwood truck when he was hit from the rear by the plaintiff, Robert L. McNabb, who was operating a 1955 Pontiac automobile. Plaintiff suffered serious and painful injuries for which he seeks recovery of damages. Plaintiff contends that he did not see the defendant’s vehicle traveling ahead of him because it had no rear lights and even the headlights of defendant’s vehicle were so dim as not to give a warning to following vehicles. Defendant contends that he did have properly operating rear lights and that the sole cause of the accident was the excessive speed of plaintiff’s vehicle; the failure of plaintiff to keep a proper lookout ; and the failure of plaintiff to keep his vehicle under proper control.
In his written reasons for judgment, the trial judge analyzed the testimony and concluded that the defendant’s truck did not have its rear lights burning, and that the plaintiff was not guilty of any negligence causing or contributing to this accident. Defendant strenuously contends that the trial judge erred in the above two respects.
Defendant contends that the truck was equipped with two taillights which were in operation and in plain view of traffic approaching from the rear. In support of this, defendant testified that some three weeks prior to the accident he had been arrested and fined for not having operative taillights; that subsequently he had secured taillights and installed them; and that on the night of the accident he had stopped prior to the time of the collision to check his taillights and found them in good order. Several witnesses for the plaintiff, including the driver of the tow truck who pulled the pulpwood truck in, testified that an examination of the defendant’s truck after the accident revealed no operating taillights nor any which appeared to be operative prior to the accident. Furthermore, these witnesses further testified that there were no wires within three feet of the clearance lights (lights on the cab of the truck) so that it would have been impossible for any taillights to have been connected.
Our examination of the testimony of numerous witnesses bearing on this point, leaves us with the conclusion that the trial judge committed no manifest error in this regard. In his reasons for judgment, the trial judge stated:
“The court is satisfied from the testimony of the witnesses that the Brumfield truck did not have its lights on. While Brumfield and his witness testified that the lights were burning and that they had stopped three quarters of a mile from Highway 51 when it got dark to be sure the lights were' on, the court believes this tale to be a little far-fetched. Brumfield had been picked up and fined once before for not having his tail lights on and he admitted that very often in hauling logs out of the woods, the wires would become broken and the lights knocked off.
“The testimony of several witnesses after the accident was that there were no lights burning in the rear, the wires were not connected and there was mud caked in one light showing that it had never been used.”
Having found that the trial judge did not manifestly err in his finding that the defendant was operating his vehicle without taillights, the only question now before us is whether plaintiff was operating his vehicle at such an excessive rate of speed as to not be able to stop within the range of his headlights.
Plaintiff testified that he was traveling at about 50 MPIT; that he had dimmed his lights because of an approaching vehicle; *23 •that when the approaching vehicle had passed he flicked his lights on bright and saw the defendant’s truck in the center of his lane; that he put on his brakes but could not avoid striking the truck. Defendant, James Brumfield, testified that he was proceeding at about 25 MPH when the accident occurred. Several witnesses for defendant testified that they had observed the plaintiff’s vehicle immediately prior to the accident and that they would estimate his speed at about 60 to 65 miles per hour.
Under the circumstances, we feel that the case is governed by the reasoning set out in Byrd v. Elliott, La.App. 2 Cir., 1958, 108 So.2d 248, 250, wherein the Court stated:
“The issue of law which is presented ¡by this appeal must be resolved in accordance with the generally enunciated .and accepted rule of liability which attaches to motorists, resulting in a conclusion of responsibility for collisions with the rear end of preceding vehicles •on a public highway, or it must be considered as falling under the equally well established exception to the general rule as exemplified in that line of cases beginning with Gaiennie v. Cooperative Produce Co., Inc., 196 La. 417, 199 So. 377; reiterated inter alia, in Rea v. Dow Motor Co., La.App., 36 So.2d 750, and Lynch v. Fisher, La.App., 41 So.2d 692. Specific factors which are taken into consideration in classifying a case under the exception have been denominated as the locality, the position of the vehicles, the nature ■ of their construction and the operation and effect of lighting equipment. Measuring the application of the facts established in the instant case it must be observed that defendant’s speed was reasonable, his lights were dimmed in • consideration of the flow of approaching traffic, the locale of the accident was on the open highway, no warning lights were visible from the rear of the other vehicle, and the construction of such vehicle was clearly of that un- - usual skeletal character which, in itself, constitutes an unexpected hazard upon the public highway.”
Counsel for defendant strongly relies on the case of Rachal v. Balthazar, La.App. 2 Cir., 32 So.2d 483. In that case a rear-end collision occurred when the lead vehicle, without taillights, was struck by the plaintiff, who was proceeding at about 25 MPH. The plaintiff himself testified that he was blinded by an approaching automobile. The facts in the Balthazar case can be distinguished from the instant case. The plaintiff in the following vehicle was blinded by the approaching lights of another vehicle and did not reduce his speed. Certainly, to proceed at any speed on an open highway when one is utterly blinded is negligence. However, in the instant case the plaintiff and the approaching vehicle had dimmed their lights and there is no evidence to show that plaintiff was blinded by the automobile that had approached and passed him. The case at bar comes within the exception to the general rule. The truck could not be seen by the plaintiff until both vehicles had passed the approaching car and been relieved of the effect of the car’s lights. Plaintiff was not blinded by the approaching lights but complained of the make or construction, etc. and the total lack of taillights and the bob-tailed truck was not discernible until plaintiff had cleared the scope of the lights of the approaching car which was just as they passed. At this point plaintiff immediately saw the bob-tailed truck but it was too close for him to avoid the collision.
Plaintiff answered this appeal only to the extent that he asks that the expert fee of Dr. Bannerman be raised from $50 to $200.
It was necessary for Dr. Banner-man to drive from Baton Rouge to Amite and return, a distance of approximately 120 miles. Dr. Bannerman had accepted the plaintiff’s case when he was injured and could or should have foreseen that he would be expected to testify in the event of suit, either by deposition or attendance in open *24 court. In view of the fact that it was necessary for him to drive 120 miles round trip and to testify in open court, we will amend the lower court’s award and increase the fee of Dr. Bannerman to $150.
For the reasons assigned, the judgment is affirmed at appellant’s costs.
Affirmed.