At about 6:30 o'clock on the evening of October 22d 1946, Clinton Richard Hathaway was killed when the large motor vehicle operated by him crashed into the rear end of a somewhat similar vehicle on the highway ahead. Hathaway had been divorced from his wife, who is now Mrs. Walter G. Woodall, and she, as tutrix of the minor son of herself and Hathaway, brought this action for damages against Southern Scrap Material Company, the owner of the vehicle which was run into, and the American Automobile Insurance Company, the liability insurance carrier of the Southern Scrap Material Company.
Hathaway was driving a large tractor or motor vehicle which was pulling a tremendous trailer, both of which pieces of equipment belonged to Huff Truck Lines, Inc. Plaintiff alleges that Hathaway was on his way to New Orleans on what is known as the Airline Highway and that he was driving on the right-hand side of the road at a moderate speed when he saw on the road ahead of him another truck which was proceeding at a slower speed; that he "blinked" the lights of his tractor to indicate to the driver ahead that he intended to pass it, and that then he pulled to the left and was about to pass that truck when he noticed the headlights of still another vehicle going in the opposite direction and on the other side of the road. Plaintiff alleges that therefore Hathaway dimmed his headlights and that the driver of the oncoming vehicle dimmed his also, but that as Hathaway turned to the right to resume his proper position on the right-hand side of the road ahead of the truck he had just passed, he crashed into the rear end of a large trailer and tractor belonging to Southern Scrap Material Company. Plaintiff also alleges that the said vehicle of the Southern Scrap Material Company was "either stopped or moving at a very, very slow rate of speed," and that it "failed to exhibit any lights, signs or reflectors on the rear or sides thereof to warn any motorist *Page 496 
of the presence of said vehicle upon the roadway and in violation of the statutes of the State of Louisiana." Plaintiff also alleges that "Hathaway was driving his truck at a speed not exceeding 40 miles per hour; that he was suddenly confronted with the truck and trailer of defendant which was either stopped or moving at a very, very slow rate of speed * * *," and that Hathaway "did everything in his power, when confronted with this emergency, to avoid the consequences thereof."
Negligence is charged against the Southern Scrap Material Company and its agents and employees in the following particulars: In stopping the vehicle on the highway at night without rear or clearance lights or in operating it at a slow rate of speed without rear or clearance lights; in failing to take precautions to make the presence of the said vehicle obvious to operators of other vehicles; in loading the trailer with heavy iron and other material in excess of the statutory limit, which made it difficult for it to proceed at a normal rate of speed.
Defendants answered, denying all of the allegations of negligence and specially pleading, in the alternative, that contributory negligence of Hathaway himself was the proximate cause of the accident. In the answer appear the following charges of negligence which are made against Hathaway: That he operated his vehicle at an excessive rate of speed, which was so great that he could not stop within the range of vision afforded by his headlights; that he failed to see, or failed to heed the presence of the tractor and trailer ahead of him, although they were equipped with a tail light and with clearance lights; that he drove his vehicle into the rear end of the trailer ahead, which was traveling on the highway; that he failed to maintain a proper lookout; that he failed to pass the trailer on its left notwithstanding the fact that there was no traffic on that side of the road and that he failed to keep his vehicle under control.
When the case was called for trial in the Civil District Court for the Parish of Orleans, counsel for defendants objected to the introduction of any evidence on the ground that the petition of plaintiff "does not show either right or cause of action against either defendant." After arguments on this objection, the district judge made the following ruling:
"After analysing the petition, while it is open to the construction that plaintiff was guilty of contributory negligence, it is also open to the possible construction that he might not, due to exceptional circumstances. The Supreme Court, in the later cases, has said that the rule is that you must be able to stop within the range of your lights, each case must be decided on its own facts. I don't believe I can say that this petition conclusively shows that the petitioner was guilty of contributory negligence.
"Under these conditions, I'll let the objection go to the effect and it is understood that your objection applies throughout, without the necessity of repetition; that your rights are reserved; and that you offer evidence subject to the objection."
After a trial on the merits there was judgment dismissing plaintiff's suit and she has appealed.
Ordinarily, in considering traffic accident cases and, in fact, all actions "ex delicto", is customary to first look into the question of whether or not there was primary negligence in the defendant and then, if it is found that there was such negligence, to investigate the question of whether there was contributory negligence. However, it sometimes happens that evidence tending to show contributory negligence seems to stand out predominantly, and in such cases it may be better to consider that evidence first because, if it appears that the true cause of the accident was the negligence or contributory negligence of the person injured or killed, then there can be no recovery regardless of whether there was or was not primary negligence chargeable to the defendant.
In Lehon v. New Orleans Public Service, Inc., 10 La. App. 715, 123 So. 172, 174, we said: "Since we are of the opinion that the proximate cause of the accident was the negligence of the driver of plaintiff's car, it will serve no good purpose to discuss the question of whether or not there was negligence on the part of the defendant, as the law is well settled that, where an accident is caused by the contributing negligence of *Page 497 
a person injured, he cannot recover, notwithstanding the fact that the other party may also have been at fault. Gibbens v. New Orleans Terminal Co., 159 La. 347, 105 So. 367; Townsend v. Missouri Pacific R. Co., 6 La. App. 303; Brown v. Texas P. Railroad Co., 42 La. Ann. 350, 7 So. 682, 21 Am.St.Rep. 374."
In Smith v. Illinois Central R. Co., 10 La. App. 342, 120 So. 405, we followed this course, saying: "Before discussing the actions of defendant's employees, it seems to us advisable to determine whether Smith himself was free from fault, because, whatever may have been the negligence of defendant's employees, plaintiff cannot recover if Smith was guilty of any negligence which contributed proximately to the accident."
A reading of the record in the case at bar convinces us that it is unnecessary to determine whether the defendant, Southern Scrap Material Company, was at fault, because if it was guilty of everything charged in the petition, we are thoroughly convinced that the true cause of the accident was the carelessness of Hathaway himself in driving his vehicle at night at high speed into the rear of the moving trailer which, under the circumstances, he should have seen.
The highway at the point at which the accident occurred has four traffic lanes. It is a double highway having a neutral ground in the middle. The two double driveways are paved with concrete, each about 20 feet wide, and the highway is straight for several miles in each direction.
According to plaintiff's witnesses, Hathaway was operating the very heavy equipment of the Huff Truck Lines, Inc., at a speed which admittedly was as high as 35 or 40 miles an hour when the accident occurred. One of the plaintiff's witnesses says that it was "a pretty fast speed * * *. I'd say around 35 or 40 miles per hour, at the least."
The photographs which are introduced in evidence show that the crash must have been terrific. The entire cab of the tractor which Hathaway was driving was completely demolished and the very heavy trailer into which he crashed was turned over on its side. When we remember that the trailer into which Hathaway crashed was moving and the evidence shows beyond any question that it was moving, though slowly, it becomes apparent that the speed at which Hathaway was driving his vehicle was excessive, because it must have been much greater than was the speed of the overtaken vehicle or it could not have done the tremendous damage which it did do.
Plaintiff placed on the stand Julius R. Addison who said that he was operating the truck around which Hathaway's vehicle passed just before it crashed into the rear of the trailer of the Southern Scrap Material Company. Addison said that he saw the trailer which was ahead of him and that immediately before the accident he was "about 200 yards back of the truck." A little later he said that he was about 150 yards back of that truck when he discovered it; that he was traveling at about 30 miles an hour and that the equipment driven by Hathaway passed him and immediately afterward crashed into the rear of the trailer. If this is true, then we see no reason why Hathaway should not have seen the trailer which Addison saw when it was 150 yards ahead of him, unless it be that Hathaway was blinded by the headlights of the other vehicle, and we shall discuss that question a little later.
As a matter of fact, there is grave doubt concerning the presence of Addison at the time of the accident. The Highway Police officer, who went to investigate the accident and arrived very shortly afterward, knew nothing whatever of the presence of Addison though he would have been the first person at the scene if his statement is true. If he was immediately behind the truck driven by Hathaway when it crashed into the trailer which was ahead of it, Addison himself would have had difficulty in avoiding crashing into those vehicles, and necessarily he would have been the first one to arrive on the scene. Yet no other witness except Mr. Huff, who reached the scene sometime later, knew anything about the presence of Addison. As a matter of fact, Mr. Bullock, another witness for plaintiff, who was driving the car which was going in the other direction, says that he arrived at the scene first, and he did not know anything *Page 498 
about the truck which Addison was supposed to have driven nor of the presence of Addison.
Mr. Bullock says that he was driving his car in the opposite direction and that he saw Hathaway dim his headlights and therefore dimmed his in response. He says that Hathaway did not drive around any other vehicle as Addison says he did. Before Bullock reached the point at which the accident occurred, Hathaway's tractor had crashed into the rear of the moving trailer and when this crash occurred Bullock had not yet reached that point. He says that after the crash occurred, he reached the point opposite the two vehicles and stopped his car, but that in the meantime he had dimmed his lights so that obviously they were no longer blinding to Hathaway if, in fact, they had ever had that effect on him. We do not think they were ever blinding because they were on the other side of the very wide four-lane highway. Hathaway was on the right-hand side of his side of the highway and the Bullock car was on the other side and on the far side of the neutral ground, so there was not presented the situation which is sometimes found when two vehicles with blinding headlights meet on an ordinary two-lane highway.
It is firmly established that it is the duty of one who drives a motor vehicle at night to so operate it as to be able to stop it within the range of vision afforded by its headlights. Odom v. Long, La. App., 26 So.2d 709; Tatum Bros. v. Herrin Transportation Co., La. App., 29 So.2d 799; Rachal v. Balthazar et al., La. App., 32 So.2d 483; Lynch v. Fisher et al., La. App., 34 So.2d 513; Ledoux v. Beyt et al., La. App.,35 So.2d 472.
It is also settled that there may be exceptional circumstances which will serve to exculpate a driver who, because of those exceptional circumstances and in spite of due diligence, fails to discover some obstruction or some other vehicle on the road ahead of him. Jacobs v. Jacobs,141 La. 272, 74 So. 992, L.R.A. 1917F, 253; Moncrief v. Ober, 3 La. App. 660; Kirk v. United Gas Public Service, 185 La. 580,170 So. 1; Hemel v. United States Fidelity Guaranty Co., La. App., 31 So.2d 38.
And we know, too, that no fixed rule may be laid down by which it may be determined just what will constitute such exceptional circumstances. Gaiennie v. Cooperative Produce Co.,196 La. 417, 199 So. 377. See, also, Louisiana Power Light Co. v. Saia, La. App., 173 So. 537; Woodley Collins v. Schusters' Wholesale Produce Co., 170 La. 527, 128 So. 469.
In Hemel v. United States Fidelity and Guaranty Company, supra, we said [31 So.2d 39]: "While in innumerable cases it has been held that, regardless of the primary negligence of the person who has left the other vehicle or obstruction in the road, the failure of the operator of a motor vehicle to stop his car before running into a stationary vehicle or other obstruction in the road ahead of him constitutes such contributory negligence as will prevent recovery for injuries to him or for damage sustained by the vehicle driven by him, it has also been definitely established in our jurisprudence that this result should be reached in each case only after taking into consideration all of the circumstances and facts surrounding the particular occurrence."
The well established rules to which we have referred have not been changed by the decision of the Supreme Court in Dodge v. Bituminous Casualty Corporation, rendered on February 14th, 1949. 39 So.2d 720. That opinion, with the "per curiam" by which a rehearing was refused, indicates to us that the Supreme Court is still of the opinion that the driver of a vehicle is under the primary duty of operating it so that he will not run into any obstruction or vehicle ahead of him, but that there may be exceptional circumstances which will excuse his failure to see such obstruction or other vehicle in time to avoid it.
Counsel for plaintiff, in addition to contending that the Dodge case, supra, nullifies the other jurisprudence to which we have referred, feels that Carter v. Le Blanc Lumber Co., La. App. 37 So.2d 471, and Rea v. Dow Motor Company, La. App.,36 So.2d 750, are authority for the view taken by him and are contrary to the views which we have just expressed.
We see several distinctions between the facts of this case and those presented in *Page 499 
Rea v. Dow Motor Co. In the first place, in that case the car which was run into was standing still and was only partially on the highway. In fact, it was stopped at an angle with its left rear corner only a few feet over the edge of the highway, and it was painted an olive drab color for the purpose of camouflaging it, and in the rain which was falling it could not be noticed. Furthermore, the car which was approaching in the other direction in the Rea case did not dim its headlights as Bullock did in the case at bar.
The Carter case is not so easily distinguishable for there the vehicle which was run into from the rear was moving as was the trailer in this case, but we find nothing in the record to indicate that the highway had four lanes as did the highway in the case at bar, and the vehicle which was approaching in the other direction did not dim its lights as did Bullock. Neither of those cases can be considered as varying from the established jurisprudence on the subject.
Bearing in mind the above settled jurisprudence, we cannot avoid the conclusion that there can be no recovery by plaintiff for the reason that Hathaway should have seen the moving trailer on the road ahead of him. Addison, the driver of the intervening truck, if there was any such truck, plainly saw the trailer when it was 150 yards ahead of him.
The headlights on the tractor which Hathaway was driving were in perfect condition according to Mr. Huff, an official of the company which owned that tractor. If there was no intervening truck then there was nothing which interfered with the view of Hathaway.
Counsel for plaintiff argues that the intervening vehicle driven by Addison prevented Hathaway from seeing the other trailer and that this was an additional exceptional circumstance which can be pointed to as exculpating Hathaway. If there was any such intervening truck it cannot be considered as justifying Hathaway's failure to see the trailer into which he crashed, for the reason that if he found it necessary to go around such an intervening truck and to dim his headlights as he did, it was his duty to take extraordinary precautions, and he should not have dashed around the other vehicle and back to the right hand side of the road without making certain that it was safe for him to do so. If he found it necessary to dim his lights, he should have substantially reduced his speed in accordance with the reduction of his range of vision.
Though written reasons were not given, that was obviously the conclusion reached by the district court. And obviously, too, it was the conclusion reached by the Judge of the Twenty-fourth Judicial District Court in another case which arose out of this same accident. In the other case, Huff Truck Lines, Inc., brought suit against Southern Scrap Material Company and its liability insurance carrier for the damages sustained by the Huff truck which Hathaway was driving and, in that case, the same issues as are presented here were presented to that court and, by agreement of counsel, that case was submitted on a transcript of the evidence which was adduced in this case. In that case the district judge rendered a written opinion and dismissed the suit. We quote from his opinion:
"The Court is of the opinion that an examination of the testimony of the witnesses produced by the plaintiff on the question of negligence, some of which has been corroborated by the defendant's witnesses, leads the Court to believe that the sole negligence was on the part of the driver of plaintiff's truck in not observing the truck of the Southern Scrap Material Company, Ltd., immediately in front of his truck whether the said Southern Scrap Material Company, Ltd., truck exhibited lights or not said truck should have been within the full range of the lights of the plaintiff company's truck. And further, the testimony reveals that the truck of the defendant, Southern Scrap Material Company, Ltd., was being driven on the extreme right hand side of the road, thus leaving an entire lane open between the Southern Scrap Material Company, Ltd., truck and the neutral ground which route, if pursued by the driver of the plaintiff's truck, would have avoided said accident.
"The Court is of the opinion that the sole cause of said accident was due to the *Page 500 
excessive speed of the plaintiff's truck and failure to keep a proper lookout by the driver of said plaintiff's truck."
The accident was caused by the negligence of Hathaway. It is immaterial that there may also have been fault in Southern Scrap Material Company.
Judgment affirmed.
Affirmed.