ELLIS, Judge.
Plaintiffs-appellants have appealed from an adverse judgment as the result of a collision between the automobile owned by plaintiff, Everett M. Nelms, and being driven at the time by his wife, Pauline Byrd Nelms, also a plaintiff herein, with the automobile belonging to and being driven by the defendant-appellee, Warren Beckcom, on a clear dry day at about 10 :00 a.m. on June IS, 1957. Suit was not filed until June 13, 1958, and answer was filed on August 29, 1958 but no effort was made by plaintiffs to bring the case to trial. At the request of defendant’s counsel, on December 8, 1958 it was fixed for trial for February 18, 1959, but continued at the request of plaintiff’s counsel until March, 1959, and on this date it was partially tried but left open for plaintiff to produce additional testimony by way of depositions and on April 29, 1959 it was finally submitted to the lower court on briefs.
The accident in question occurred in Vernon Parish on a rural dirt road, which had some gravel. This rural road runs north and south and was straight insofar as it might have affected the occurrence of the accident, however, there is a small hill just north of the place where the collision *171 occurred but this hill was sufficient distance from the point of collision so that it was not a contributing factor. This road was described by the witnesses and the trial court in its written reasons as being oval in the middle, that is, what is commonly known as “hog backed”, with but one set of wheel ruts approximately in the center which is usual with such roads. On each side of the travelled portion were sloping shoulders somewhat muddy due to recent rains. The ruts were semi-dry. Plaintiff-appellants car was going south and the defendant-appellee’s car was traveling north. The latter was a rural mail carrier and was alone in his car, while in the Nelms car were Mrs. Nelms, driving, and her twelve year old brother-in-law, Dwight Nelms, sitting to her right on the front seat, holding Mrs. Nelms’ sixteen month old baby on his lap.
According to Mrs. Nelms’ version, she was driving up this small hill and when she got nearly to the top she saw the Beckcom car coming north about forty feet away in the middle of the road and she realized that “she had to do something to get out of the road, so I pulled over to my side as far as I could get, put my brakes on and stopped, and he came on and skidded into my car, to the left of my car.” She also stated that this road at the point of collision was eighteen feet in width.
On the other hand the version of the defendant, Beckcom, is that he was driving north on this country road at about 20 to 25 miles per hour, with his wheels in the two ruts and as he approached the top of the hill he saw the Nelms’ car approaching when about 200 feet away and he immediately pulled to the right hand side of the road, “ * * * and checked my speed, but the car continued to come toward me. It didn’t give me any road or didn’t slow down, so, I pulled the car up, what I thought was out of the center of the road and brought it to a complete stop.” In spite of his having pulled over to his right and stopped, defendant Beckcom states that Mrs. Nelms continued to come on and her car never left the center of the road and struck his car on the left hand side, veered off and went into the ditch on the right hand side.
The defendant Beckcom’s version of the accident is corroborated by the physical facts as well as testimony of witnesses offered on the trial of the case. The District Court in well written reasons accepted his version rather than that of Mrs. Nelms, however, he thought that neither Mrs. Nelms nor Beckcom intentially misstated any facts while on the stand.
The left front fender of the Nelms car came in contact with the left side of the Beckcom car, beginning on the left front fender, lower part, with scratches and scrape marks to the rear of the front wheel and the side swiping becoming more pronounced as it went toward the rear of the car. It tore the outside of the front door loose where it joins the front fender, generally bent up the door, and also bent in the rear door to the rear of the post. This would seem to be the hardest impact. The Nelms car then apparently veered away from the Beckcom car, after striking it, to the right and went with its front end down in the sloping ditch. The Beckcom car after the accident was slightly at an angle to the right facing northeast and the rear end more toward the west, with the left rear wheel just to the right of the east rut. In other words, apparently Beckcom had pulled to his right in order to avoid the accident so that none of his wheels were left in the rut in the road.
The District Court decided the case upon the assumption, for the sake of argument, that Mr. Beckcom was negligent in such a manner as to contribute proximately to the accident, still he believed the plaintiffs were barred from recovery because, even taking Mrs. Nelms’ own version of the happening as correct, the conclusion was inescapable that she was contributorily negligent and that her contributory negligence contributed proximately to the happening of the accident. The crux of the *172 written reasons for judgment by the Judge of the lower court are as follows:
“Mrs. Nelms testified that not more than 40 feet separated the two cars when she first saw the Beckcom car approaching. She said she was traveling about 25 miles per hour and was sure Mr. Beckcom was traveling between 45 and 50 miles per hour. In order to make the illustration most favorable to Mrs. Nelms, let us suppose Mr. Beckcom was also traveling at the same rate of speed she was, or at 25 miles per hour. This would mean that the distance was being diminished between the two cars as if one was stopped and the other going at fifty miles per hour. At 50 miles per hour a car travels at the rate of 73 feet per second. She said that after she saw the Beckcom car, 40 feet away, she applied her brakes, turned to the right, drove her car into the ditch on the west side of the road and had come to a complete stop when her car was struck by the Beckcom car skidding into the front of hers. If she was right, she had only about one-half of one second to do all those things, obviously an impossibility. According to the best table available, at 50 miles an hour, an automobile will travel about 60 feet, while the driver of average reflexions is making up his mind in an emergency what to do and then taking the action necessary to execute the decision. In other words, granting that Mrs. Nelms is a person of average reflexions, if she is correct about the distance separating the cars when she first saw the Beckcom car, the collision necessarily had to occur before she could even have applied the brakes. The same chart referred to shows that, generally, it takes approximately 175 feet to stop a car, traveling at 50 miles per hour, after the brakes are applied. If there are any who doubt the approximate correctness of these figures, he has only to drive his car at 50 miles an hour and demonstrate it for himself. He will find that, at that rate, he can’t take his foot off the accelerator and apply his brakes before the car travels 40 feet. And most assuredly he cannot take his foot off the accelerator, move it to the brake pedal, apply the brakes and come to a complete stop in a distance of even twice forty feet, or even at 25 miles per hour, and even if he already knows what he is going to do and doesn’t have to wait until the muscles respond to the message telegraphed to them by the eye and by way of the brain’s central office.
“I am confident that Mrs. Nelms is correct and that she did not see the Beckcom car appro? "hing her from the south until they were very close together, in fact, too close to enable her to take any effective action toward preventing the impending crash. The accident occurred in mid-morning. The sun was shining, she was going up a slight incline, and had her sunvisors pulled down to shield her eyes from the sun. It is a matter of common knowledge to those of us who have frequently traveled rutted dirt roads that close watch has to be kept on the road immediately in front of the car, to see holes in the road, the best place to drive, etc. Perhaps all of those conditions serve to explain her failure to sooner see the approaching car. Suffice it to say that she did not see it until it was too late for her to take any effective action to avoid the accident.
“Mr. Beckcom, testified to the happening of the accident in this manner:
“Well, I was driving north up this road that is sometimes called the cutoff or back road going from Highway 171 to I believe it is 173, east of Hurn-beck. It is also spoken of as the David Jett road and on this morning as I approached the top of the long hill I saw a car approaching. I immediately pulled to the right hand side of the road, and checked my speed, but the car continued to come toward me, it didn’t give any road or didn’t slow down, so, I pulled the car up, what I thought was out of the center of the road and brought it to a complete stop.
“Well, this approaching car, driven by Mrs. Nelms, continued to come on. It didn’t leave the center of the road *173 and it struck my car on the left hand side and then it sheared off and went into the ditch on the right hand side.”
Mr. Beckcom’s testimony as to the point of impact on his car is corroborated by the photograph “D-2” filed in evidence by defendant, that is, that his car was hit a heavy glancing blow at about the front of the left front door and another about the front df the left rear door. The left front fender of the Nelms car was damaged.
The testimony of Officer Howeard and and the State Trooper Stephens, who investigated the accident, establishes that when the cars came to rest, the left front wheel of the Beckcom car was a few inches east of the east rut in the road, while his left rear wheel was a few inches west of the east rut. In other words, the car was almost parallel with the east rut, the front being a few inches further to his right than his rear. It seems rather certain to me that Mr. Beckcom had pulled over to &e right, until his left wheels were in or very close to the east ruts.
“I think it is a matter of common knowledge amongst those of us who have long ■driven on rural dirt roads, that it is common practice for meeting cars, on such roads as this one, to wait as long as they feel they ■safely can before leaving the established ruts. To leave the traveled ruts before it is necessary means that one will have to drive on a sloping shoulder often times muddy, and slippery, and consequently difficult to negotiate. Usually each driver will -turn his car far enough to his right to place his left wheels in the rut furtherest -to his right. This gives each car at least ■a solid footing for one set of his wheels, and enables the cars to pass each other with the center of the road between the ruts between the cars as they pass.
“My conclusion from the evidence is that what happened here was that when Mr. Beckcom saw the approaching car about 200 feet away, he began pulling to his right and had almost gotten both of his left wheels into the east rut when he realized that the other car was not going to yield any part of the traveled portion of the road. He attempted then to get his car completely to his right of the traveled portion, but it was too close to enable him to complete the movement.
“Rules of the road require that a vehicle shall be driven on the right side of the road except when passing and overtaking another vehicle and vehicles approaching in opposite directions shall pass each other to the right, each giving the other, for at least 200 feet before meeting, one half of the main traveled portion of the road. [LSA-]R.S. 32:231 and 232. My opinion is that Mr. Beckcom complied with these statutory requirements, but Mrs. Nelms failing to see the car approaching her, failed to yield any part of the traveled portion of the road until it was too late. It seems manifest to me that Mrs. Nelms’ failure to keep a proper look out and her failure to see what she should have seen, and what, in law, she is charged with having seen, were the proximate causes of the accident.
“The Court failed to find, from the evidence, that any act of negligence on the part of Mr. Beckcom contributed to the accident. But, granting, for the sake of argument, alone, that he, in some manner, was negligent and that such negligence contributed to the accident, it cannot be reasonably contended that Mrs. Nelms was free of negligence or that her negligence did not contribute, proximately, to the happening of the accident, for it seems apparent that had she timely discovered the presence of the other approaching car, or had timely yielded part of the main traveled portion of the road, as she was obliged to do under the law, it would not have happened.
“Where a plaintiff’s own negligence contributes to the accident, he cannot recover. Matthews v. N[ew] O[rleans] Terminal Co. [La.App.], 45 So.2d 547; Bagala v. Kimble, 225 La. 943, 74 So.2d 172; Guidroz v. Travelers Ins. Co. [La.App.], 99 So.2d *174 916. This rule is subject to the exception that plaintiff’s own contributory negligence will not bar his recovery if the defendant had the last clear chance to avoid the accident.”
We agree with the facts and conclusions reached by the trial judge. Counsel for the plaintiff-appellant contends that the defendant Beckcom did not clear the ruts prior to the collision and therefore did not use all available means to avoid injuring the plaintiff. He argues that Beckcom could have driven his car completely out of the center of the road. According to the testimony he did exactly this for the center of the road was between the two ruts and the defendant pulled his car far enough to the right to where only the left rear wheel was in the east or right rut traveling north at the time Mrs. Nelms sideswiped his car. As soon as the defendant saw Mrs. Nelms 200 feet away he started pulling to his right and then realizing that she was not going to honor his portion of the road, he pulled still further to the right and brought his car to a stop with the front end completely out of the east rut. His entire car was clearly to the right of the center of the road and, as a matter of fact, he gave Mrs. Nelms part of his lane of travel. It is apparent that Mrs. Nelms just was not keeping a proper lookout and did not see the defendant when she should have seen him and could have easly avoided the accident. We believe that the defendant was telling the truth when he testified that he asked Mrs. Nelms how far away she was when she first saw him, and she replied, “I didn’t see you till I hit you, I was looking down.”
Counsel for plaintiffs-appellants contends that the defendant had the last clear chance under the facts. The minute the defendant saw Mrs. Nelms approaching at a distance of 200 feet he got completely off of her portion of the highway, and then he realized that she was still coming down the middle of the road occupying the two ruts and he pulled further to the right in an effort to avoid the accident. Beckcom did all that he could in the time and distance that he had in order to avoid the accident. He had a right to assume that she would see him and pull to her right, however,-he did not hold his portion of the highway but pulled further to his right and brought his car to a stop, completely abandoning a portion of his lane of travel to the approaching Nelms vehicle. We do not believe that the doctrine of last clear chance can be applied so as to hold the defendant Beckcom liable.
For the above and foregoing reasons the judgment of the District Court is affirmed.