HALL, Judge.
Plaintiff brought suit under Article 2315 of the Civil Code (LSA-C.C. 2315) against the City of New Orleans, the Municipal Yacht Harbor Commission of the City of New Orleans, and their liability insurer, for damages for personal injuries sustained T>y him in a fall from a wooden pier in the Municipal Yacht Harbor in the City of New Orleans. Defendants denied fault on their part and alternatively plead contributory negligence on the part of plaintiff. From a judgment denying him recovery and dismissing his suit, plaintiff appealed.
The primary issues are purely factual.
At about 10:00 P.M. on Tuesday night, April 29, 1958 plaintiff fell from a pier while •■attempting to board the yacht “Nutria” which was moored in slip No.-204 of the Municipal Yacht Harbor. This yacht harbor is owned by the City of New Orleans and is operated by the City through its agency the Municipal Yacht Harbor Commission.
Slip No. 204 is one of several hundred open slips in harbor which are leased by the City to various boat owners. These slips are formed by wooden walkways or “finger piers” which at regular intervals extend out at right angles from each side of a long concrete pier which runs the width of the harbor. The wooden walkways are supported by parallel rows of wooden pilings driven into the harbor bottom. The pilings are connected by wooden stringers nailed or bolted to them and boards are nailed across the stringers to form the walkway. Some of these piles are permitted to extend 1 to 2' above the level of the walkway in order to accommodate the mooring lines of boats using the slips.
Slip No. 204 had for some years prior to the accident been used by Mr. Robert U. Blum, lessee of the slip, as a berth for his lugger-type yacht “Nutria”, which he habitually moored with its prow toward the concrete pier and with its starboard side close alongside and parallel to one of the finger piers in such position that a gate or break in the pipe rail surrounding the deck of the yacht came opposite one of the mooring pilings of the pier.
In order to assist those boarding the yacht, especially women and children, in stepping from the finger pier to the boat’s deck, Mr. Blum had nailed a small board or block of wood to this piling for use as a step. This step which was about 20" long with a 12" tread was attached to the pile about 18 inches below the level of the walkway of the pier, and the distance from this step down to the deck of the “Nutria” varied according to the level of the tide, but at mean tide the distance was approximately 18 inches.
Plaintiff, a life-long friend of Mr. Blum’s, had been engaged for several days prior *790 to the accident in installing a new electrical system in the “Nutria”. At about 10:00 P.M. on the night of the accident, plaintiff accompanied by one Edward Carter went out to the “Nutria” to install the master fuses. As he stepped down from the walkway he assumed that the step was beneath his foot. However, earlier that day the step had been removed by employees of the Yacht Harbor in order to replace a rotted stringer in the finger pier. Plaintiff plunged forward but caught himself with his right hand on one of the “Nutria’s” stanchions and thus avoided falling into the water. In doing so however he sustained a twisted injury to his left knee.
We deem it expedient in this matter to consider first the plea of contributory negligence, because if the record shows there was negligence on the part of the plaintiff which contributed proximately to his accident, it becomes entirely unnecessary to consider whether the defendants were guilty of primary negligence. See Woodall v. Southern Scrap Material Co., La.App., 40 So.2d 495; Guidroz v. Travelers Insurance Company, La.App., 99 So.2d 916; Sizeler v. Southwestern Fire & Casualty Co., La.App., 105 So.2d 746; Emmco Insurance Co. v. Implement Dealers Mutual Insurance Company, La.App., 123 So.2d 652.
The evidence shows that for several days prior to the accident employees of the yacht harbor had been engaged in replacing rotted stringers and decking in the finger pier alongside the “Nutria”. These repairs were quite extensive, approximately one-half of the boards in the walkway having to be replaced. Plaintiff was aware that this work was going on because he had been on the “Nutria” supervising the electrical work during the Saturday, Sunday and Monday immediately preceding his accident. The electrical work was completed on Monday with the exception of the installation of the master fuses, and on Tuesday night about 10 o’clock plaintiff went out to the yacht harbor to install them.
According to plaintiff’s own testimony the night was “extremely dark”, so dark that had the employees of the Harbor Commission left a barrier across the pier he would have tripped over it. There are a few lights on the concrete pier but the one closest to the “Nutria” was out and the finger pier was in complete darkness. There was no visible light aboard the “Nutria” and neither plaintiff nor his companion had a flash light.
Plaintiff testified that he walked out on the finger pier and attempted to board the “Nutria”. When questioned about the manner in which he attempted to step from the walkway onto the boat, plaintiff said that he did not take hold of the piling or attempt to catch the railing of the boat before he stepped down onto the wooden step. Instead he stepped down first, intending to catch a stanchion on the boat with his right hand in one continuous motion. He stepped off the walkway with his right foot and because the step had been removed he stepped into space and plunged forward, saving himself from falling into the water by grabbing the stanchion. His left foot remained on the pier and the fall twisted his left knee.
Plaintiff further testified that he did not look for the step and if he had looked it was so dark he could not have seen it. Neither did he feel for the step with his foot. He said he just stepped down in the same manner he would walk down the.steps at home.
Under the circumstances we are of the opinion that plaintiff obviously was guilty of gross negligence which contributed directly and approximately to his accident. His negligence bars his recovery and renders it unnecessary to discuss whether defendants were guilty of primary negligence.
For the foregoing reasons the judgment appealed from is affirmed.
Affirmed.